**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| LAURA ABRAMS on behalf of herself and all others similarly situated, <br><br>         Plaintiff, <br><br> v. <br><br> THE SAVANNAH COLLEGE OF ART AND DESIGN, INC., <br><br>         Defendant. | CIVIL ACTION NO. <br> 1:22-CV-04297-LMM |

**<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION</u>**
**<u>FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................1

II.    BACKGROUND ...................................................................2

III.   TERMS OF THE SETTLEMENT AGREEMENT...........................3

IV.    NOTICE PROGRAM AND CLAIMS PROCESS …………………...5

V.     THE SETTLEMENT WARRANTS FINAL APPROVAL…………..6

    A.    Legal Standard for Final Approval of Class Action Settlement………..6

    B.    Argument………………………………………………………8

        1. The *Bennett* Factors Weigh in Favor of Final Approval……………8

           a.    The Benefits of Settlement Outweigh the Risk of Future Litigation……………………………………………………8

           b.    The Settlement Compares Favorably to Other Common Fund Data Breach Settlements………………………………………8

           c.    Continued Litigation Would be Time Consuming and Expense………………………………………………….….…10

           d.    The Class Overwhelming Supports the Settlement and the Sole Objection is Materially Deficient…………………………..11

           e.    Plaintiff had Sufficient Information to Thoroughly Evaluate the Merits of the Case and Negotiate a Favorable Settlement……13

        2. The Rule 23(e) Factors Support Final Approval…………………..14

           a.    The Class was Adequately Represented…………….………14

           b.    The Settlement was Negotiated at Arm's Length…..………15

           c.    The Settlement Provides Class Members with Significant Cash Benefits……………………………………….……………16

           d.    The Complexity, Expense, and Risk of Future Litigation……16

           e.    The Terms Relating to Attorneys' Fees are Reasonable……..17

           f.    No Other Agreements Exists under Rule 23(e)(3)……...……19

           g.    Class Members Are Treated Equally Relative to Each Other……………………………………………………19

**VI.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS**……………………………………………………………19

    A.    The Rule 23(a) Requirements are Satisfied…………………..…..…19

    B.    The Rule 23(b)(3) Requirements are Satisfied………………………21

**CONCLUSION**.........................................................................................24

# TABLE OF AUTHORITIES

Page(s)

Cases

*Alghadeer Bakery & Marker, Inc. v. Worldpay US, Inc.*,
  No. 1:18-cv-02688-MLB, 2020 WL 10935986 (N.D. Ga. June 3, 2020)............17

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)....................................................................................... 21, 23

*Ass'n for Disabled Ams., Inc., v. Amoco Oil Co.*,
  211 F.R.D. 457 (S.D. Fla. 2002)...........................................................................8

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) .............................................................................7

*Burhl v. Price Waterhousecoopers Int'l.*,
  257 F.R.D. 684 (S.D. Fla. 2008)........................................................................20

*Burrow v. Forjas Taurus S.A.*,
  No. 16-21606-Civ, 2019 WL 4247284 (S.D. Fla. Sept. 6, 2019)........................11

*Cabot E. Broward 2 LLC v. Cabot*, No.,
  16-61217-CIV, 2018 WL 5905415 (S.D. Fla. Nov. 9, 2018)...............................18

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
  258 F.R.D. 545 (N.D. Ga. 2007) .......................................................................14

*Cotter v. Checkers Drive-In Rests., Inc.*,
  No. 8:19-cv-1386, 2021 WL 3773414 (M.D. Fla. Aug. 25, 2021) .....................10

*Dickens v. GC Servs. Ltd. P'ship*,
  706 F. App'x 529 (11th Cir. 2017)....................................................................22

*Francisco v. Numismatic Guaranty Corp. of Am.*,
  No. 06-616677-CIV, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008) .....................16

*In re Arby's Rest. Grp., Inc. Data Sec. Litig.*,
  No. 1:17-cv-1035-WMR, 2019 WL 2720818 (N.D. Ga. June 3, 2019)........ 10, 11

*In re Citrix Data Breach Litig.*,
  No. 19-61350-CIV, 2021 WL 2410651 (S.D. Fla. Jun 11, 2021) ......................10

*In re Equifax Inc. Customer Data Security Breach Litig.*,
  999 F.3d 1247 (11th Cir. 2021) ...........................................................................21

*In re Google Plus Profile Litig.*,
  No. 5:18-cv-06164, 2021 WL 242887 (N.D. Cal. Jan. 25, 2021) ......................11

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
  MDL No. 09-2046, 2012 WL 896256 (S.D. Tex. Mar. 14, 2012) ......................16

*In re TJX Cos. Retail Sec. Breac*h Litig.,
  524 F. Supp. 2d 83 (D. Mass. 2007), aff'd, 564 F.3d 489 (1st Cir. 2009) ...........17

*In re TJX*,
  246 F.R.D 389 (D. Mass. 2009)............................................................................17

*Legg v. Laboratory Corp. of Am.*,
  No. 14-cv-61543-CIV, 2016 WL 3944069 n.2 (S.D. Fla. Feb. 18, 2016) ...........11

*Lone Star Nat'l Bank N.A. v. Heartland Payment Sys., Inc*.,
  729 F.3d 421 (5th Cir. 2013) ...............................................................................17

*Lunsford v. Woodforest Nat'l Bank*,
  No. 1:12-cv-103, 2014 WL 12740375 (N.D. Ga. May 19, 2014) ......................18

*McWhorter v. Ocwen Loan Servicing LLC*,
  No. 2:15-cv-01831, 2019 WL 9171207 (N.D. Ala. Aug. 1, 2019) ......................19

*Morgan v. Pub. Storage*,
  301 F. Supp. 3d 1237 (S.D. Fla. 2016)................................................................18

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*,
  292 F. Supp. 3d 1018 (S.D. Cal. 2017)........................................................ 12, 13

*Rosado v. Ebay Inc.*,
  No. 5:12-CV-04005, 2016 WL 3401987 (N.D Cal. June 21, 2016) ...................12

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
601 F.3d 1159 (11th Cir. 2010) ............................................................................22

*SELCO Cmty. Credit Union v. Noodles & Co.*,
267 F. Supp. 3d 1288 (D. Colo. 2017)................................................................16

*Terrill v. Electrolux Home Pr*ods., Inc.,
295 F.R.D. 671 (S.D. Ga. 2013) ..........................................................................19

*Waters v. Int'l Precious Metals, Corp.*,
190 F.3d 1291 (11th Cir. 1999) ...........................................................................17

*Williams v. Mohawk Indus., Inc.*,
568 F.3d 1350 (11th Cir. 2009) ...........................................................................19

*Wolff v. Cash 4 Titles*, No.,
03-22778-CIV, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ...........................17

*Wreyford v. Citizens For Transp. Mobility, Inc.*,
No. 1:12-CV-2524-JFK, 2014 WL 11860700 (N.D. Ga. Oct. 16, 2014).............18

**Statutes**

O.C.G.A. § 13-6-11.................................................................................................2

**Rules**

Fed. R. Civ. P. 23(e)(2)........................................................................................6, 7
Fed. R. Civ. P. 23(e)(2)(A-D)..................................................................................7
Fed. R. Civ. P. 23(e)(C)(i)-(iv) ...............................................................................7
Fed. Rule Civ. Pro. 23(b)(3)(D)............................................................................21
Rule 23(b)(3)..................................................................................... 22, 23
Rule 23(e)(3) ...........................................................................................................7

Consistent with this Court's April 10, 2023, Order Granting Preliminary Approval of Class Action Settlement [Doc. 22], Plaintiff Laura Abrams, on behalf of herself and Class Members, respectfully requests that the Court grant final approval of this class action settlement as it is fair, reasonable, and adequate. The amount recovered per class member and the roughly 10% claims rate compare very favorably to the results obtained in other similar data breach common fund settlements.

## I.    INTRODUCTION

Plaintiff Laura Abrams and the preliminary-approved Settlement Class she represents, with Class Counsel's assistance, reached a nationwide class action settlement with Defendant, The Savannah College of Art and Design, Inc. ("Defendant" or "SCAD"), for a $375,000.00 non-reversionary common fund resolving claims related to the August 2022 Data Security Incident that potentially impacted approximately 16,890 of SCAD's current and former students and employees (the "Data Security Incident"). The Settlement provides significant relief to Settlement Class Members including direct cash payments of any funds remaining in the Settlement Fund.  In addition to the benefits obtained under the Settlement, Class Counsel also designed an effective Notice program including a postcard Notice with a tear-off claim form. To date, the Settlement Class is reacting very favorably to the Settlement and submitting claims at a rate that exceeds the vast

1

majority of other similar data breach class action cases. Accordingly, the Settlement benefits and Settlement Class's reaction to the Settlement support final approval of class action settlement as the Settlement is fair, reasonable, and adequate.

## II.     BACKGROUND

On October 31, 2022, Plaintiff Abrams filed a nationwide class action complaint against Defendant in this District alleging that SCAD failed to implement and maintain reasonable data security measures. *See generally* [Doc. 1]. Plaintiff asserted claims for negligence, unjust enrichment, breach of express contract, breach of implied contract, invasion of privacy, and statutory claims under O.C.G.A. § 13-6-11. *Id.* Thereafter, the Parties' Counsel initiated settlement discussions which resulted in multiple extensions of the time for SCAD to answer or otherwise respond to Plaintiff's Complaint. *See generally* [Docs. 9; 10; 13; 14; 15; and 16]. Before reaching a settlement in principle, the Parties exchanged information adequate to evaluate the merits of this case, including, confirming the number of individuals impacted by the Data Security Incident, confirming that the types of information potentially compromised are uniform for purposes of this settlement for potentially all Settlement Class Members, reviewing arbitration agreements Defendant has for certain Settlement Class Members, discussing the number of Settlement Class Members for whom Defendant has email addresses, and discussing other data breach settlements involving educational institutions. Coates Declaration in Support of

Preliminary Approval of Class Action Settlement ("Coates Preliminary Approval Decl."), ¶ 5 [Doc. 21-4]. On February 3, 2023, the Parties reached a settlement in principle and moved to stay the case pending the filing of a Motion for Preliminary Approval. [Doc. 17]. On February 7, 2023, this Court granted the Parties' Motion to Stay and ordered Plaintiff to file a Motion for Preliminary Approval by March 15, 2023. [Doc. 18]. Plaintiff submitted her original Motion for Preliminary Approval on March 15, 2023. [Doc. 19]. After meeting and conferring with Counsel for SCAD and receiving guidance from the Court on March 22, 2023, Plaintiff submitted her Amended Motion for Preliminary Approval for the Court's consideration on March 31, 2023. *See generally* [Doc. 20]. On April 10, 2023, the Court issued an Order Granting Preliminary Approval of Class Action Settlement. [Doc. 22].

## III.    TERMS OF THE SETTLMENT AGREEMENT

Under the proposed Settlement, Defendant will pay or cause to be paid $375,000.00 to establish the Settlement Fund to be distributed to Settlement Class Members under the Settlement Agreement. The Settlement defines the Settlement Class as follows:

> [T]he individuals identified on the Defendant Settlement Class List whose certain personal information may have been involved in the Data Security Incident. Excluded from the Settlement Class are: (1) the judge presiding over this Litigation, and members of her direct family; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and

employees; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.[1]

Settlement Agreement, ¶ 44. The Settlement Class is comprised of approximately 16,890 individuals nationwide. Coates Preliminary Approval Decl., ¶ 5. Under the Proposed Settlement, SCAD agrees to pay a total of $375,000.00 into the Settlement Fund, which will be used to make payments to Settlement Class Members and to pay the costs of Notice and Administrative Expenses, and attorneys' fees and expenses. *See* Settlement Agreement, *¶¶* 47, 55. The requested attorneys' fees are one-third, $125,000.00, of the $375,000.00 common fund and the litigation expenses are $1,548.24.[2]

The Settlement Fund will be used to pay $50 *pro rata* to each Settlement Class Member submitting a valid claim under the Settlement. Settlement Agreement, ¶ 57(i). This $50 cash payment will be increased *pro rata* or decreased *pro rata* after the payment of any documented Out-of-Pocket Losses as identified below, and for attorneys' fees, expenses, and the Notice and Administrative Expenses. *Id.* The

---

[1] "Data Security Incident" shall mean the August 2022 cybersecurity incident against SCAD giving rise to the action.

[2] Class Counsel originally requested $1,558.24 in litigation expenses in Plaintiff's Unopposed Motion for Attorneys' Fees and Litigation Expenses [Doc. 24]. Upon the change of the Final Approval Hearing from September 19, 2023, to September 22, 2023, Mr. Coates of Class Counsel rebooked his flight to Atlanta for the Final Approval Hearing and received a $10 flight credit due to the rebooked flight being $10 less than the flight booked for the original Final Approval Hearing. Accordingly, Class Counsel reduce their expenses request by $10 so that the request is now $1,548.24.

Settlement Fund will provide the reimbursement of up to $5,000 per claimant for documented Out-of-Pocket Losses that are fairly traceable to the Data Security Incident. *Id*. at ¶ 57(ii). *Id*. The Settlement Fund will also compensate the Settlement Class for lost time at a rate of $25 an hour for up to 5 hours (*i.e.*, a $125 cap). *Id*. at ¶ 57(iii). Additionally, the Settlement Fund will be used to pay for any attorneys' fees, expenses, and the cost of Settlement Administration, as approved by the Court. *Id*. at ¶¶ 52-56.

## IV.    NOTICE PROGRAM AND CLAIMS PROCESS

Atticus Administration, LLC, the Court-appointed Settlement Administrator, implemented the Notice program consistent with the Court's Order Granting Preliminary Approval of Class Action Settlement. [Doc. 22]. On May 5, 2023, Atticus mailed the Short Form Notice to approximately 16,890 Class Members. Atticus Decl., ¶ 6. On May 10, 2023, Atticus emailed the Long Form Notice to 13,796 Class Members for whom SCAD had complete email addresses. *Id*., ¶ 7. On July 10, 2023, Atticus then emailed the Long Form Notice to 12,725 Class Members for whom SCAD provided email addresses and who had not yet filed a Claim Form. *Id*., ¶ 8. Atticus also activated the Settlement Website and posted important case information on the Settlement Website. *Id*., ¶ 9. Furthermore, Atticus established the toll-free line for the Settlement. *Id*. The Settlement Website received 4,873 visits and the toll-free line fielded 214 calls. *Id*. Atticus received 11 timely opt-out requests

from Class Members and one untimely opt-out request. *Id*., ¶ 10. One untimely objection was also received. *Id*., ¶ 11.

Atticus received 1,821 claims submissions consisting of 1,122 online claims, 695 paper claims, and four claims via email. *Id*., ¶ 13. Atticus also issued Notice of Deficient Claim Form/Opportunity to Correct Letters pursuant to the Settlement Agreement. *Id*., ¶ 14. To date, Atticus has determined that 1,664 claims are valid, 152 are invalid, and 5 are pending completion of the cure process. *Id*., ¶ 16. Of the 1,664 valid claims, 1,020 are for Lost Time payments, 1,627 are for *pro rata* cash payments, and 11 are for out-of-pocket expense payments. *Id*., ¶ 17.

## V.    THE SETTLEMENT WARRANTS FINAL APPROVAL

The $375,000.00 non-reversionary common fund settlement for approximately 16,890 Class Members including several forms of cash payments is fair, reasonable, and adequate when analyzed under the relevant factors for determining whether to grant final approval of class action settlement.

### A. Legal Standard for Final Approval of Class Action Settlement

Class actions may be settled only upon the court determining that the settlement is "fair, reasonable, and adequate" after considering a number of factors. Fed. R. Civ. P. 23(e)(2). The Eleventh Circuit has established the six *Bennett* factors to evaluate whether to grant final approval of a class action settlement: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point below

the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Federal Rule 23(e)(2) also identifies several factors that must be considered when determining whether a class action settlement is fair, reasonable, and adequate: "whether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats all class members equitably relative to each over. Fed. R. Civ. P. 23(e)(2)(A-D). In considering whether the settlement relief provided is sufficient, courts must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(C)(i)-(iv).  In considering these factors, "[t]here is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation of being most complex." *Ass'n for Disabled Ams., Inc., v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002).

### B. Argument

#### 1. The *Bennett* Factors Weigh in Favor of Final Approval

##### a. The Benefits of the Settlement Outweigh the Risks of Future Litigation

The cash payments to Class Members for potentially several types of alleged injury is a strong recovery for Class Members compared against the backdrop of uncertainty that continued litigation brings. For example, Plaintiff would need to survive a motion to dismiss, successfully petition the Court for class certification, and survive a motion for summary judgment before having her day in court for a possible trial. Continued litigation of this matter would bring uncertain results and risks. A Settlement now on the terms Plaintiff was able to forge in the form of a non-reversionary $375,000.00 common fund providing cash benefits to Class Members compares well against the risk inherent with future litigation in a data breach class action. Accordingly, this factor supports final approval.

##### b. The Settlement Compares Favorably to Other Common Fund Data Breach Settlements

The $375,000.00 non-reversionary common fund is a sound recovery for the Settlement Class of approximately 16,890 individuals and compares well with other recent data breach cases, including a similar case involving another educational institution. The chart below compares the amount recovered per Settlement Class

Member against the amount recovered in four other recent data breach class action

settlements[3] and highlights the beneficial result achieved for the Settlement Class:

| Case Name | Case Number | Settlement Amount | Class Size | Per Person |
|---|---|---|---|---|
| *Reynolds v. Marymount Manhattan College* | No. 1:22-cv-06846 (S.D.N.Y.) | $1,300,000 | 191,752 | $6.78 |
| *Tucker v. Marietta Area Health Care* | No. 2:22-CV-00184 (S.D. Ohio) | $1,750,000 | 216,478 | $8.08 |
| *Migliaccio v. Parker Hannifin Corp.* | No. 1:22-CV-00835 (N.D. Ohio) | $1,750,000 | 115,843 | $15.10 |
| *Lutz v. Electromed, Inc.* | No. 21-cv-2198-KMM-DTS (D. Minn.) | $825,000 | 47,000 | $17.55 |
| ***Abrams v. Savannah College of Art & Design, Inc.*** | **No. 1:22-cv-04297 (N.D. Ga.)** | **$375,000** | **16,890** | **$22.20** |

The $22.20 per Settlement Class Member recovery in this case exceeds the

amount recovered in each of the other four cases listed above – with *Reynolds* and

*Tucker* being preliminarily approved and *Migliaccio* and *Lutz* being finally

approved. Furthermore, the $22.20 per Settlement Class Member recovery compares

well against the other similar data breach class action settlement involving an

educational institution, *Reynolds v. Marymount Manhattan College*. In this case, the

---

[3] Counsel recognize that different types of impacted data and other factors may
impact the settlement terms of every data security incident class action.

recovery per class member is over three times higher than the $6.78 recovered per class member in *Reynolds*.

### c. Continued Litigation Would be Time Consuming and Expensive

Data breach class actions are complex and remain unpredictable. *See Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386, 2021 WL 3773414, at *12 (M.D. Fla. Aug. 25, 2021) (noting data breach class actions present "serious risks" due, in part, to "the ever-developing law surrounding data breach cases"); *In re Citrix Data Breach Litig.*, No. 19-61350-CIV, 2021 WL 2410651, at *3 (S.D. Fla. Jun 11, 2021) ("Data breach cases in particular present unique challenges with respect to issues like causation, certification, and damages."); *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-1035-WMR, 2019 WL 2720818, at *3 (N.D. Ga. June 3, 2019) ("Further, data breach litigation involves the application of unsettled law with disparate outcomes across states and circuits. Georgia law, in particular, presents challenges."). This case is no exception. The pursuit of nationwide claims and relief presented complex issues of law and fact. Plaintiff also faced the hurdle of trying to maintain this case as a class action while Defendant claimed that the majority of the Settlement Class had signed arbitration agreements. These facts

support that continued litigation would be time consuming and expensive and weigh

in favor of final approval.

### d. The Class Overwhelming Supports the Settlement and the Sole Objection is Materially Deficient

The Class has responded very favorably to this Settlement in that over 1,820

claims have been submitted out of the approximately 16,890 Class Members for a

claims rate of approximately 10.8%. Atticus Decl., ¶ 16. Based on Class Counsel's

experience with handling other data breach class actions, a 10.8% claims rate is high

in a data breach class action. Coates Decl., ¶ 6, 7. Even reducing the claims to only

1,664 valid claims, the resulting claims rate of roughly 9.9%, is still a strong claims

rate in a data breach class action. *Id.*

In addition to the claims, there were 12 exclusion requests with one of those

being untimely and one untimely objection. The 11 timely exclusion requests equate

to a very low .0065% of the Class excluding themselves from the Settlement. Other

courts within this Circuit have found that 11 timely opt-out and one objection to be

"low" and to "weigh in favor of granting final approval of the Settlement. *Burrow v.

Forjas Taurus S.A.*, No. 16-21606-Civ, 2019 WL 4247284, at *10 (S.D. Fla. Sept. 6,

2019). Moreover, the sole objection to the Settlement is untimely. For that reason

alone, it should be overruled. *Legg v. Laboratory Corp. of Am.*, No. 14-cv-61543-

CIV, 2016 WL 3944069, at *3 n.2 (S.D. Fla. Feb. 18, 2016) (overruling objection in

part because it was untimely); *In re Google Plus Profile Litig.*, No. 5:18-cv-06164, 2021 WL 242887, at *4 (N.D. Cal. Jan. 25, 2021) (noting that "all untimely objections are overruled."). Even if this Court were to consider the merits of the sole objection, the objection should still be overruled because it is illogical in that the objection asks to defend SCAD to the extent "SCAD has done everything right" while also wishing to object to the settlement if "SCAD has been negligent in their cybersecurity program" because the objector believes the settlement amount is too low. The Settlement in no way bars objector from working with SCAD. The objector's other argument "wish[ing] to increase the amount to more appropriate levels befitting of SCAD" is an insufficient basis for objecting. Courts have concluded that a class member objecting to a settlement because the payment amount is too low is an improper basis for objecting because the class member may opt out of the settlement and seek a potentially higher individual recovery. *See, e.g., Rosado v. Ebay Inc.*, No. 5:12-CV-04005, 2016 WL 3401987, at *9 (N.D Cal. June 21, 2016) (noting that "[i]f the objector believes he has suffered damages that are significantly higher than the typical class member, he should opt out of the class and separately pursue his claims against" the defendant); *Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1042 (S.D. Cal. 2017) (finding an objection unpersuasive, in part, because the class member was free to opt out if he or she believed that the settlement amount was too low). Objections are also found to be

unpersuasive when, as here, the objector submits no evidence to support his or her claim that the settlement payment is too low. *Rosado*, 2016 WL 3401987, at *9; *Nunez*, 292 F. Supp. 3d at 1042.

Given the lack of a valid objection, only 11 timely exclusion requests, and a claims rate of approximately 10%, this factor weighs in favor of final approval as the Class has responded favorably to the Settlement and its cash benefits.

### e. Plaintiff had Sufficient Information to Thoroughly Evaluate the Merits of the Case and Negotiate a Favorable Settlement

Plaintiff was well informed when negotiating the resolution of this Action. Plaintiff submitted a list of settlement discovery requests to Defendant for the purpose of gaining sufficient information to make a well-informed demand. Before submitting her demand for a class-wide settlement, Plaintiff knew the size of the class, the data elements potentially impacted by the Data Incident, that arbitration agreements had the potential to compel most Class Members' individual claims to arbitration, and that SCAD had insurance coverage for Plaintiff's claims. Coates Decl., ¶ 4. This information gave Plaintiff the ability to analyze her and the Class's claims and to understand the potential for class-wide damages. *Id.* Accordingly, Plaintiff had sufficient information to evaluate the merits of her case. This factor weighs in favor of final approval.

13

### 2. The Rule 23(e) Factors Support Final Approval

#### a. The Class was Adequately Represented

The first step in finally approving a class action settlement under Rule 23(e)(2) involves two questions: "(1) whether the [class representatives] have interests antagonistic to the interests of other class members; and (2) whether the proposed class's counsel has the necessary qualification and experience to lead the litigation." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 555 (N.D. Ga. 2007). For purposes of settlement, Plaintiff Abrams is an adequate representative for the Class because she asserted claims against SCAD due to her Private Information being impacted in the Data Incident – the same Data Incident that also impacted the Private Information of the Class. Accordingly, for these purposes she has the same claims and same cause of her injuries as the rest of the Class Members. Furthermore, she has stayed apprised of the case's progress and has remained engaged in this Litigation by reviewing the allegations in the Complaint and reviewing and approving the terms of the Settlement Agreement. Abrams Decl., at ¶ 4, 5.

Class Counsel are appropriately qualified to lead this Litigation on behalf of Plaintiff and the Class. Class Counsel have represented plaintiffs in state and federal courts across the county in data privacy class actions and have achieved many recent favorable results for plaintiffs including serving as class counsel in *John v. Advocate*

*Aurora Health, Inc.*, No. 22-CV-1253-JPS (E.D. Wis.) ($12.25 million data privacy class action settlement). *See also* Coates Decl., ¶ 12; [Doc. 24-1] at 13-14. Class Counsel's skill in avoiding compelling portions of the Class to arbitration, utilizing informed settlement discovery requests to receive the information necessary to make an informed demand, and in procuring tangible cash benefits for Class Members further demonstrates that Class Counsel are sufficiently qualified to serve as Class Counsel in this Litigation.

### b.  The Settlement was Negotiated at Arm's Length

The Settlement was negotiated over several months with Plaintiff submitting a demand to SCAD only after receiving details on the class size, details on the data elements impacted by the Data Incident, and that SCAD had potentially credible defenses. [Doc. 24-1], at 2-3. Plaintiff and SCAD then participated in a series of offers and counteroffers over the course of several months before arriving at the $375,000.00 settlement amount. The Parties' discussions also included negotiation over the appropriate settlement structure for this case (claims made settlement v. common fund settlement). Coates Decl., ¶ 3. Ultimately, Plaintiff was able to achieve her preferred settlement structure of a non-reversionary common fund that will permit Class Members to receive cash payments and the potential for a *pro rata* increase to the *pro rata* cash payment to the extent any settlement funds remain unclaimed through the claims process. These facts demonstrate that the Settlement

was negotiated at arm's length with the assistance of counsel for each side who are experienced in handling data privacy class actions.

### c. The Settlement Provides Class Members with Significant Cash Benefits

The Settlement provides Class Members with cash benefits including the $50 *pro rata* cash payment, up to $125 payment for Lost Time at up to 5 hours at $25 per hour, and up to $5,000 in documented out-of-pocket losses. These cash payments permit Class Members to pick and choose one, two, or all of the cash settlement benefits through the use of a simplified tear-off claim form that was included in the Short Form Notice or online via the Settlement Website. The $50 *pro rata* cash payment is also important because it permits Class Members to increase their settlement benefits to the extent that any funds remain in the Settlement Fund after claims have been processed.

### d. The Complexity, Expense, and Risk of Future Litigation

"Class actions are inherently complex to prosecute because the legal and factual issues are complicated and uncertain in outcome." *Francisco v. Numismatic Guaranty Corp. of Am.*, No. 06-616677-CIV, 2008 WL 649124, at *15 (S.D. Fla. Jan. 31, 2008). Data breach class are complex and carry significant risk in that some

cases have failed at the dismissal or class certification stages.[4] *See, e.g.*, *SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1292 (D. Colo. 2017) (dismissing a nationwide class action for a data breach at Noodles & Co, holding Colorado's economic loss rule prohibited tort damages caused by the data breach); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, MDL No. 09-2046, 2012 WL 896256 (S.D. Tex. Mar. 14, 2012) (after three rounds of dismissal motions, dismissing among other claims, negligence), *rev'd sub nom.*, *Lone Star Nat'l Bank N.A. v. Heartland Payment Sys., Inc*., 729 F.3d 421, 424 (5th Cir. 2013) (concluding that New Jersey's economic loss doctrine could not be applied at dismissal stage); *In re TJX Cos. Retail Sec. Breach Litig.*, 524 F. Supp. 2d 83 (D. Mass. 2007) (dismissing claims for negligence and negligence per se), *aff'd*, 564 F.3d 489 (1st Cir. 2009); *In re TJX*, 246 F.R.D. 389, 400 (D. Mass. 2007) (denying class certification because individual issues of reliance, causation, and damages predominated).

### e. The Terms Relating to Attorneys' Fees are Reasonable

Here, the $125,000.00 of attorneys' fees consisting of one-third of the $375,000 common fund is consistent with the Settlement Agreement, the content of the Notices, and the Motion for Attorneys' Fees and Litigation Expenses that were

---

[4] Understanding that there is overlap between *Bennett* factors and the Rule 23(e) factors relating to the complexity, expense, and risks of future litigation, Plaintiff incorporates her arguments above under Section V.B.1.c. above to avoid repetition.

filed with the Court and posted on the Settlement Website. Furthermore, Class Counsel's request of one-third of the common fund is consistent with fee awards in similar common fund settlements within this Circuit. *See, e.g.*, *Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide -roughly one-third"); *Alghadeer Bakery & Marker, Inc. v. Worldpay US, Inc.*, No. 1:18-cv-02688-MLB, 2020 WL 10935986, at *4 (N.D. Ga. June 3, 2020) ("The fee represents one-third of the $15 million cash settlement fund, which the Court finds to be reasonable and consistent with awards in similar cases in this Circuit."); *Waters v. Int'l Precious Metals, Corp.*, 190 F.3d 1291, 1292-98 (11th Cir. 1999) (affirming attorneys' fees of 1/3 of the $40 million common fund); *Morefield v. NoteWorld, LLC*, Nos. 1:10-CV-00117; 1:11-CV-0029, 2012 WL 135573, at *5 (S.D. Ga. Apr. 18, 2012) (1/3 of $1,040,000 common fund); *Lunsford v. Woodforest Nat'l Bank*, No. 1:12-cv-103, 2014 WL 12740375, at *15 (N.D. Ga. May 19, 2014) (fee award of 1/3 of the common fund); *Cabot E. Broward 2 LLC v. Cabot*, No. 16-61217-CIV, 2018 WL 5905415, at *7-8 (S.D. Fla. Nov. 9, 2018) (awarding fee of $33,333,333 of the $100 million common fund); *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1257 (S.D. Fla. 2016) (noting that "a fee award of 33% … is consistent with attorneys' fees in federal class actions in this Circuit."). Class Counsel's attorneys' fee request of 1/3 ($125,000.00) of the $375,000.00 common fund is reasonable in

that it is within the range typically approved by courts within the Eleventh Circuit. *See also Wreyford v. Citizens For Transp. Mobility, Inc.*, No. 1:12-CV-2524-JFK, 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014) (granting attorneys' fees request of 1/3 of the common fund and noting that such fee awards "are not uncommon in this state and circuit for relatively small class actions such as this.").

### f.  No Other Agreements Exist under Rule 23(e)(3)

The Settlement Agreement and attachments are the only agreements impacting the Settlement. Accordingly, there are no additional agreements for the Court to consider. This factor also supports final approval.

### g.  Class Members are Treated Equally Relative to Each Other

Each Class Member is eligible to submit a claim for one or more cash settlement benefits. Furthermore, all Class Members were afforded ample opportunity to opt-out or object to the Settlement. *See McWhorter v. Ocwen Loan Servicing LLC*, No. 2:15-cv-01831, 2019 WL 9171207, at *12 (N.D. Ala. Aug. 1, 2019) (noting that class members' ability to exclude themselves from a settlement indicates equitable treatment of class members and supports final approval).

## VI.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

### A. The Rule 23(a) Requirements are Satisfied

Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements are satisfied for purposes of this Settlement.

*Numerosity*: The Class of approximately 16,890 individuals is sufficiently "numerous that joinder of all class members is impracticable" thereby satisfying Rule 23(a)'s numerosity requirement.

*Commonality*: Commonality "requires 'that there be at least one issue whose resolution will affect all or a significant number of putative class members,'" *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009), and "is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *Terrill v. Electrolux Home Prods., Inc*., 295 F.R.D. 671, 685 (S.D. Ga. 2013), vacated and remanded on other grounds, *Brown v. Electrolux Home Prods*., 817 F.3d 1225 (11th Cir. 2016). Here, Plaintiff, on behalf of all Class Members, asserts that the Class's Private Information was compromised as a result of the Data Incident, and the Class brings the same legal claims based on SCAD's common conduct. All Class Members' claims arise out of SCAD's conduct resulting in the Data Incident. Accordingly, commonality is satisfied for purposes of settlement.

*Typicality*: In order to satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "Typicality is satisfied where the named plaintiffs' claims arise from the same event or pattern or practice and are abed on the same legal theory as the claims of the class" *Burhl v. Price Waterhousecoopers Int'l.*, 257 F.R.D. 684,

689 (S.D. Fla. 2008). Here, the claims of all Class Members involve Defendant's alleged failure to protect Plaintiff's and Class Members' Private Information. Thus, Plaintiff's claims are typical of those of the claims of the Class, and she is an appropriate Class Representative. Typicality is satisfied for purposes of settlement.

*Adequacy*: As mentioned above, Plaintiff and Class Counsel have adequately represented the Class. Accordingly, Rule 23(a)'s adequacy requirement is satisfied for purposes of this settlement. With all four of Rule 23(a)'s requirements met in this case, final class certification is warranted.

## B. The Rule 23(b)(3) Requirements are Satisfied

Final class certification is also appropriate because Plaintiff and the Class meet Rule 23(b)(3)'s predominance and superiority requirements for purposes of this settlement. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *In re Equifax Inc. Customer Data Security Breach Litig.*, 999 F.3d 1247, 1275 (11th Cir. 2021). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire

21

whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Pro. 23(b)(3)(D), for the proposal is that there be no trial.").

For purposes of settlement, in this case the common factual and legal questions all cut to the issues "at the heart of the litigation." Indeed, the answers to these questions are not tangential or theoretical such that the litigation will not be advanced by certification. Rather, they go right to the center of the controversy, and the answers will be the same for each Class Member. As such, because the class-wide determination of this issue will be the same for everyone and will determine whether any class member has a right of recovery, the predominance requirement is readily satisfied for settlement.

The second prong of Rule 23(b)(3)—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy—is also readily satisfied for the purpose of this settlement. *See* Fed. R. Civ. P. 23(b)(3). A superiority analysis pursuant to Rule 23(b)(3) involves an examination of "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010) (internal quotation omitted). The Agreement provides Settlement Class Members with certain relief and contains well-defined administrative procedures to ensure due process. This includes the right of any Settlement Class Member to object to it or to

request exclusion. Moreover, there is no indication that Settlement Class Members have an interest in individual litigation or an incentive to pursue their claims individually, given the amount of damages likely to be recovered, relative to the resources required to prosecute such an action. *See Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 538 (11th Cir. 2017) (describing "the ways in which the high likelihood of a low per-class-member recovery militates in favor of class adjudication").

For purposes of settlement adjudicating individual actions here is impracticable. The amount in dispute for individual class members is too small, the technical issues are too complex, and the required expert testimony and document review would be far too costly. In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Instead, the individual prosecution of Class Members' claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings. Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there will be no trial.").

Thus, the Court should grant final approval of class action settlement including finally certifying the Settlement Class for settlement purposes under Rule 23(b)(3).

## **CONCLUSION**

For these reasons, Plaintiff and Class Counsel respectfully ask the Court to enter an Order Granting Final Approval of Class Action Settlement.

Respectfully submitted this 8th day of September 2023.

<u>/s/ *N. Nickolas Jackson*</u>
N. Nickolas Jackson
Georgia Bar No. 841433
**THE FINLEY FIRM, P.C.**
3535 Piedmont Road
Building 14, Suite 230
Atlanta, GA 30305
(t) (404) 320-9979
(f) (404) 320-9978
 njackson@thefinleyfirm.com

Terence R. Coates (*appearing PHV*)
Justin C. Walker (*appearing PHV*)
Dylan J. Gould (*appearing PHV*)
**MARKOVITS, STOCK & DE MARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
(t) (513) 651-3700
(f) (513) 665-0219
tcoates@msdlegal.com
jwalker@msdlegal.com
dgould@msdlegal.com

*Counsel for Plaintiff and the Settlement Class*

24

## <u>CERTIFICATE OF SERVICE AND</u>
## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

I hereby certify that on September 8, 2023, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing and effectuate service to all counsel of record in this matter, pursuant to Local Rule 5.1.

I further certify that this Motion has been prepared with one of the fonts and point selections approved by the Court in Local Rule 5.1(C).

<u>/s/ *N. Nickolas Jackson*</u>
N. Nickolas Jackson

*Counsel for Plaintiff and the Settlement Class*